Case No. 24-3359
# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

**Preston Byron Knapp,**

Appellant,

vs.

**Wings Credit Union, aka Wings Financial Credit Union,**

Appellee.

_____

On Appeal from the United States District Court
For the District of Minnesota
Case No.: 0:24-cv-00434-DWF-ECW

## APPELLEE WINGS FINANCIAL CREDIT UNION'S BRIEF

**FOLEY & MANSFIELD, PLLP**
Lisa M. Lamm Bachman (#264313)
Tessa Mansfield Hirte (#0396591)
Paul W. Magyar (#0399108)
250 Marquette Avenue, Suite 540
Minneapolis, MN  55401
Telephone:  (612) 338-8788

Attorneys for Defendant-Appellee Wings
Financial Credit Union

# SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

This case arises out of Appellant Preston Byron Knapp's ("Knapp") frivolous attempts to avoid actually paying Wings Financial Credit Union ("Wings") the amounts he owes under the parties' binding contracts and was brought solely to harass Wings and advance the conspiracy theories of Knapp's "attorney-in-fact" Brandon Joe Williams. Knapp's Complaint attempted to assert claims that arise from a conspiracy theory that has been widely rejected by federal courts, as well as claims that are patently frivolous because the statutes involved do not apply to Wings and do not provide a private right action, and that have no basis in law or fact. While a brief review of case law from numerous jurisdictions across the country would have revealed to Knapp the patently frivolous nature of his claims, he chose to ignore the law and file this absurd suit, burdening Wings, the district court, and now this Court. The district court correctly concluded that Knapp's Complaint lacked merit and dismissed it, with prejudice, and this Court should affirm.

Wings respectfully submits that this case is suitable for disposition without oral argument as no important or novel legal questions are presented.

i

## CORPORATE DISCLOSURE STATEMENT

Wings Financial Credit Union is a member-owned state-chartered credit union organized pursuant to Chapter 52 of Minnesota Statutes. It has no parent company and no publicly held company owns any stock in Wings.

Appellate Case: 24-3359    Page: 3    Date Filed: 02/04/2025 Entry ID: 5482194

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND STATEMENT REGARDING
ORAL ARGUMENT .................................................................................. i

CORPORATE DISCLOSURE STATEMENT ....................................... ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ................................................................. vi

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF THE ISSUES ............................................................2

STATEMENT OF THE CASE .................................................................3

I.     FACTUAL ALLEGATIONS ..........................................................3

II.    PROCEDURAL HISTORY ..........................................................5

SUMMARY OF ARGUMENT .............................................................13

STANDARD OF REVIEW ..................................................................14

ARGUMENT .......................................................................................15

I.    THE DISTRICT COURT PROPERLY GRANTED WINGS'
MOTION TO DISMISS. .............................................................15

    A.    Legal Standard..................................................................15

    B.    The District Court Properly Dismissed Counts 1 and 2
Because They are Based on Meritless Conspiracy
Theories. .........................................................................17

    C.    The District Court Also Properly Dismissed Count 1
Because Knapp Did Not Identify Any Provisions Within
the Parties' Contracts That Wings Allegedly Breached.....................21

    D.    The District Court Also Properly Dismissed Count 2

Appellate Case: 24-3359    Page: 4    Date Filed: 02/04/2025 Entry ID: 5482194

Because Wings Does Not Owe Knapp Fiduciary Duties and Knapp Failed to Identify Any Actions That Would Constitute a Breach. .................................................................24

E. The District Court Properly Dismissed Count 3, based on 12 U.S.C. § 504, because the Statute Does Not Apply to Wings, the Statute Does Not Provide a Private Right of Action, and Knapp Failed to Plead Facts that Would Support Imposition of a Civil Penalty...............................25

F. The District Court Properly Dismissed Counts 4, 5, and 6 Because Knapp, as a Private Citizen, Cannot Enforce Criminal Statutes. ..............................................................28

G. The District Court Also Properly Dismissed Counts 7–11 Because the Facts Alleged Have No Connection to the Claims Asserted.......................................................31

H. Knapp's Challenges to the District Court's Dismissal of His Complaint are Meritless...................................34

　　1. Wings Complied with District of Minnesota Local Rule 7.1. .......................................................35

　　2. The district court liberally construed Knapp's Complaint...........................................................37

　　3. The district court properly considered the documents embraced by the Complaint...................38

II. THE DISTRICT COURT CORRECTLY EXERCISED ITS DISCRETION IN DENYING KNAPP'S MOTION TO AMEND...............................................................................39

A. The District Court Properly Denied Knapp's Motion to Amend for Violating the Court's Order to Refrain from Filing Further Motions and As Moot. ................................39

B. The District Court Properly Denied Knapp's Motion to Amend as Futile..................................................40

iv

## TABLE OF CONTENTS (cont'd)

**Page**

III.    THE DISTRICT COURT CORRECTLY EXERCISED ITS
        DISCRETION IN GRANTING WINGS' RULE 11 MOTION. ..................45

CONCLUSION ...................................................................................48

CERTIFICATE OF COMPLIANCE AND TECHNICAL
        REQUIREMENTS ........................................................................50

Appellate Case: 24-3359    Page: 6    Date Filed: 02/04/2025 Entry ID: 5482194

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adams v. USAA Cas. Ins. Co.*,
  863 F.3d 1069 (8th Cir. 2017) ....................................................................2, 47

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
  949 F.3d 417 (8th Cir. 2020) ...............................................................30

*Aragon v. Ku*,
  277 F. Supp. 3d 1055 (D. Minn. 2017)............................................32

*Ashanti v. City of Golden Valley*,
  666 F.3d 1148 (8th Cir. 2012) .......................................................16, 38

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................2, 15, 17

*Barrett v. City of Allentown*,
  152 F.R.D. 50 (E.D. Pa. 1993) .........................................................29

*Barringer v. Ohio*,
  No. 3:23 CV 1530, 2023 U.S. Dist. LEXIS 216430 (N.D. Ohio
  Dec. 5, 2023)....................................................................................30

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................2, 16

*Bores v. Domino's Pizza, LLC*,
  530 F.3d 671 (8th Cir. 2008) ...........................................................21

*Burgs v. Sissel*,
  745 F.2d 526 (8th Cir. 1984) ...........................................................16

*United States ex rel. Burnette v. Driving Hawk*,
  587 F.2d 23 (8th Cir. 1978) .............................................................28

*Caldas v. Affordable Granite & Stone, Inc.*,
  820 N.W.2d 826 (Minn. 2012) .....................................................42, 45

Appellate Case: 24-3359    Page: 7    Date Filed: 02/04/2025 Entry ID: 5482194

# TABLE OF AUTHORITIES

*Caranchini v. Nationstar Mortg., LLC*,
   97 F.4th 1099 (8th Cir. 2024) ...................................................................14

*Carroll v. United States Equities Corp.*,
   No. 1:18-CV-667, 2020 U.S. Dist. LEXIS 258605 (N.D.N.Y. Nov.
   30, 2020) ...................................................................................................30

*Clinton v. Jones*,
   520 U.S. 681 (1997)................................................................................2, 39

*Coonts v. Potts*,
   316 F.3d 745 (8th Cir. 2003) ...................................................................46

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)...............................................................................2, 46

*Cunningham v. Ray*,
   648 F.2d 1185 (8th Cir. 1981) ...........................................................16, 37

*Demmler v. Bank One NA*,
   2006 U.S. Dist. LEXIS 9409 (S.D. Oh. Mar. 9, 2006)........................19, 20

*Diamond v. Charles*,
   476 U.S. 54 (1986)....................................................................................28

*Dockery v. Leonard*,
   46 F. App'x 868 (8th Cir. 2002) ..............................................................14

*Dubai Islamic Bank v. Citibank, N.A.*,
   126 F. Supp. 2d 659 (S.D.N.Y. 2000) ......................................................29

*Dunn v. White*,
   880 F.2d 1188 (10th Cir. 1989) ...............................................................16

*First Fin. Sec., Inc. v. Mai Lee*,
   No. 14-CV-1843, 2016 U.S. Dist. LEXIS 29585 (D. Minn. Mar. 8,
   2016) .........................................................................................................36

Appellate Case: 24-3359     Page: 8     Date Filed: 02/04/2025 Entry ID: 5482194

# TABLE OF AUTHORITIES

**Page**

*Francis v. Fannie Mae*,
No. 20-CV-5863(EK)(LB), 2021 U.S. Dist. LEXIS 48595
(E.D.N.Y. Mar. 15, 2021) ...................................................................30

*Frison v. Zebro*,
339 F.3d 994 (8th Cir. 2003) ..............................................................29

*Gap, Inc. v. Gk Dev., Inc.*,
843 F.3d 744 (8th Cir. 2016) ..............................................................36

*Gillis v. Principia Corp.*,
832 F.3d 865 (8th Cir. 2016) ..............................................................21

*H & Q Props. v. Doll*,
793 F.3d 852 (8th Cir. 2015) ..............................................................14

*Harp v. Police*,
No. 23-2577, 2023 U.S. Dist. LEXIS 139418 (E.D. Pa. Aug. 10,
2023) ....................................................................................20, 22, 23, 26

*Heart of Atlanta Motel v. United States*,
379 U.S. 241 (1964).............................................................................34

*Heide v. LaHood*,
406 F. App'x 83 (8th Cir. 2010) ..........................................................36

*Hennis v. Trustmark Bank*,
2010 U.S. Dist. LEXIS 45759 (S.D. Miss. May 10, 2010) ................20

*Hopper v. BMO Harris Bank, N.A.*,
No. 22-1828, 2023 U.S. Dist. LEXIS 133755 (D. Minn. Aug. 2,
2023) ....................................................................................................21

*Huggins v. FedEx Ground Package Sys.*,
592 F.3d 853 (8th Cir. 2010) ..............................................................36

Appellate Case: 24-3359     Page: 9     Date Filed: 02/04/2025 Entry ID: 5482194

# TABLE OF AUTHORITIES

**<u>Page</u>**

*Impulse Trading v. Norwest Bank Minn., N.A.*,
870 F. Supp. 954 (D. Minn. 1994)......................................................24

*Klein v. Sutro Bros. & Co.*,
No. 69 Civ. 3693., 1970 U.S. Dist. LEXIS 13072 (S.D.N.Y. Jan.
26, 1970) ........................................................................................29

*Knapp v. Compass Minn., LLC*,
No. 24-cv-00100, 2024 U.S. Dist. LEXIS 98771 (D. Minn. June 4,
2024) ..............................................................................................8

*Knapp v. Compass Minnesota, LLC*,
No. 24-cv-00100-SRN-DTS (D. Minn.).................................................6

*Kunzer v. Magill*,
667 F. Supp. 2d 1058 (D. Minn. 2009).................................................28

*Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*,
848 N.W.2d 539 (Minn. 2014) ...........................................................21

*McLaughlin v. CitiMortgage, Inc.*,
726 F. Supp. 2d 201 (D. Conn. 2010).........................................17, 18, 19

*P Park Mgmt., LLC v. Paisley Park Facility, LLC*,
No. 21-2128, 2022 U.S. Dist. LEXIS 194533 (D. Minn. Oct. 26,
2022) ..............................................................................................36

*Paisley Park Enterprises, Inc. v. Boxill*,
361 F. Supp. 3d 869 (D. Minn. 2019)...................................................15

*Par. v. Wolfe Clinic, P.C.*,
70 F.4th 441 (8th Cir. 2023) ..............................................................14

*Perry v. Precythe*,
121 F.4th 711 (8th Cir. 2024) .............................................................35

Appellate Case: 24-3359    Page: 10    Date Filed: 02/04/2025 Entry ID: 5482194

# TABLE OF AUTHORITIES

*Petsche v. EMC Mortg. Corp.*,
  830 F. Supp. 2d 663 (D. Minn. 2011)...................................................................43

*Plymouth Cty. v. Merscorp, Inc.*,
  774 F.3d 1155 (8th Cir. 2014) .....................................................................2, 40

*Podraza v. Whiting*,
  790 F.3d 828 (8th Cir. 2015) .....................................................................16, 38

*Porous Media Corp. v. Pall Corp.*,
  186 F.3d 1077 (8th Cir. 1999) .........................................................................38

*Rabbe v. Wells Fargo Home Mortg., Inc.*,
  No. 8:17-CV-131, 2017 U.S. Dist. LEXIS 88910 (D. Neb. June 9,
  2017) ...............................................................................................................20

*Roehrs v. Walstrom*,
  No. 0:23-cv-01885-SRN-DLM, 2024 U.S. Dist. LEXIS 102 (D.
  Minn. Jan. 2, 2024) .........................................................................................40

*Roers v. Countrywide Home Loans, Inc.*,
  728 F.3d 832 (8th Cir. 2013) ...........................................................................24

*Saraswat v. Bus. Integra, Inc.*,
  No. 15-CV-4680 (PKC) (LB), 2019 U.S. Dist. LEXIS 70054
  (E.D.N.Y. Apr. 25, 2019) .................................................................................32

*Schumacher v. Schumacher*,
  627 N.W.2d 725 (Minn. App. 2001) ...........................................................44, 45

*Selmon-Austin El v. Wells Fargo Bank*,
  No. 2:19-cv-02538-JTF-cgc, 2020 U.S. Dist. LEXIS 61713 (W.D.
  Tenn. Mar. 12, 2020) .......................................................................................29

*Sharma v. Crosscode, Inc.*,
  2022 U.S. Dist. LEXIS 47796 (D. Minn. March 17, 2022) .........................46, 47

Appellate Case: 24-3359     Page: 11     Date Filed: 02/04/2025 Entry ID: 5482194

# TABLE OF AUTHORITIES

**Page**

*Silberstein v. IRS*,
  16 F.3d 858 (8th Cir. 1994) ...........................................................................14, 36

*Stone v. Harry*,
  364 F.3d 912 (8th Cir. 2004) ......................................................................16, 38

*Tegete v. Maryknoll Sisters of Saint Dominic, Inc.*,
  No. 20-CV-5023 (CS), 2023 U.S. Dist. LEXIS 43034 (S.D.N.Y.
  Mar. 14, 2023)...........................................................................................34

*United States v. Campbell*,
  971 F.3d 772 (8th Cir. 2020) ..............................................................................1

*United States v. Farrell*,
  563 F.3d 364 (8th Cir. 2009) ...........................................................................31

*United States v. Mussry*,
  726 F.2d 1448 (9th Cir. 1984) ......................................................................32, 34

*United States v. Wadena*,
  152 F.3d 831 (8th Cir. 1998) ...........................................................................29

*Welk v. GMAC Mortg.*,
  850 F. Supp. 2d 976 (D. Minn. 2012)...............................................................46

*Zean v. Fairview Health Servs.*,
  858 F.3d 520 (8th Cir. 2017) ......................................................................17, 38

**Statutes**

12 U.S.C. § 221 ..........................................................................................................25

12 U.S.C. § 225 ..........................................................................................................18

12 U.S.C. § 412 .......................................................................................................2, 18

12 U.S.C. § 504 ...................................................................................................*passim*

Appellate Case: 24-3359    Page: 12    Date Filed: 02/04/2025 Entry ID: 5482194

# TABLE OF AUTHORITIES

**Page**

18 U.S.C. ch. 77 ...................................................................*passim*

18 U.S.C. § 1348 .............................................................10, 28, 30, 42

18 U.S.C. § 1581 ...................................................................10, 31, 42

18 U.S.C. § 1583 ...............................................................10, 31, 32, 43

18 U.S.C. § 1584 ...............................................................10, 31, 32, 43

18 U.S.C. § 1589 ...............................................................11, 31, 32, 43

18 U.S.C. § 1593A ...........................................................11, 31, 33, 44

18 U.S.C. § 1956 ...................................................................9, 28, 42

18 U.S.C. § 2314 .............................................................9, 28, 30, 42

28 U.S.C. § 547 ......................................................................2, 29

28 U.S.C. § 1291 ...........................................................................1

28 U.S.C. § 1331 ...........................................................................1

28 U.S.C. § 1367 ...........................................................................1

42 U.S.C. § 1994 ...................................................................10, 42

Minn. Stat. § 52.001 ...................................................................26

Minn. Stat. § 52.01 ...................................................................26

Minn. Stat. § 52.03 ...................................................................3

Minnesota Statutes Chapter 52 ...........................................3, 25, 26

**Other Authorities**

Fed. R. Civ. P. 4 ...........................................................................6

Appellate Case: 24-3359    Page: 13    Date Filed: 02/04/2025 Entry ID: 5482194

# TABLE OF AUTHORITIES

**<u>Page</u>**

Fed. R. Civ. P. 9(b) ........................................................................30

Fed. R. Civ. P. 11 .....................................................................*passim*

Fed. R. Civ. P. 12 ........................................................................15

Fed. R. Civ. P. 37 ........................................................................14

Local Rule 7.1 .........................................................................*passim*

Appellate Case: 24-3359    Page: 14    Date Filed: 02/04/2025 Entry ID: 5482194

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to hear issues related to the district court's Amended Memorandum Opinion and Order, which is a final order that disposed of all parties' claims upon which judgment was entered. R. Doc. 37, at 14; R. Doc. 38, at 2. The district court had federal question jurisdiction over Knapp's federal claims, and supplemental jurisdiction over Knapp's state law claims. *See* R. Doc. 1; *see also* 28 U.S.C.§ 1331; 28 U.S.C. § 1367.

The district court filed its original Memorandum Opinion and Order on November 4, 2024, with Judgment entered on November 5, 2024. R. Doc. 35; R. Doc. 36. The district court signed an Amended Memorandum Opinion and Order on November 7, 2024, but the only change in the Amended Memorandum Opinion and Order corrected the numbering of the paragraphs in the Order.[1] *Compare* R. Doc. 35, at 14, *with* R. Doc. 37, at 14. Because the Amended Memorandum Opinion and Order "did not disturb or revise legal rights and obligations," the relevant date Knapp's appeal is the original November 5, 2024 judgment. *United States v. Campbell*, 971 F.3d 772, 774 (8th Cir. 2020). Knapp filed his Notice of Appeal on November 18, 2024. *See* R. Doc. 39.

---

[1] Judgment on the Amended Memorandum Opinion and Order was entered by the clerk on November 12, 2024. R. Doc. 38.

1

# STATEMENT OF THE ISSUES

1.    Whether Knapp's Complaint fails to state a claim for which relief can

be granted.

Apposite authorities:

12 U.S.C. § 412
28 U.S.C. § 547
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

2.    Whether the district court abused its discretion in denying Knapp's

motion to amend.

Apposite authorities:

*Clinton v. Jones*, 520 U.S. 681, 706 (1997)
*Plymouth Cty. v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014)

3.    Whether the district court abused its discretion in granting in part Wings

motion for sanctions.

Apposite authorities:

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)
*Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017)

2

## STATEMENT OF THE CASE

## I.    FACTUAL ALLEGATIONS

Wings is a state-chartered credit union organized pursuant to Chapter 52 of Minnesota Statutes. *See* Minn. Stat. § 52.03. Knapp and his wife, non-party Michelle Nichole Knapp, have a mortgage loan with Wings (the "Mortgage"), and a HELOC with Wings (the "HELOC"). R. Doc. 1, ¶¶ 10–11; R. Doc. 10-1 (Mortgage); R. Doc. 10-2 (Note); R. Doc. 10-3 (Revolving Credit Mortgage); R. Doc. 10-4 (Open-End Home Equity Credit Agreement and Truth in Lending Disclosure).

Under the terms of the Mortgage and HELOC, Knapp is required to make payments on the loans when due. *See* R. Doc. 10-2, at 1 ("In return for a loan that I have received, I promise to pay U.S. $1,119,400.00 (this account is called 'Principal'), plus interest, to the order of the Lender."); R. Doc. 10-1, at 2–3 (agreeing to "pay when due the principal of, and interest on, the debt evidenced by the Note"); R. Doc. 10-3, at 2 ("Borrower shall promptly pay when due all amounts borrowed under the Credit Agreement, all finance charges and applicable other charges and collection costs as provided in Credit Agreement."); R. Doc. 10-4, at 1 ("You promise to repay to the Credit Union, or order, all advances made to you under this Plan, plus finance charges, other applicable charges, and costs of voluntary payment protection for which you are responsible for under this Plan."). Knapp

3

further agreed to make all payments under the Mortgage "in the form of cash, check or money order" and "in U.S. currency." R. Doc. 10-2, at 1; R. Doc. 10-1, at 3.

In November of 2023, Knapp signed a document appointing Brandon Joe Williams ("Williams") as his "attorney-in-fact" and purporting to grant Williams the power to "[p]erform any act necessary to deposit, negotiate, sell or transfer any note, real estate, security, or draft of the United States of America, including U.S. Treasury Securities. This includes any non-US notes, securities, drafts, etc. This includes indorsements, approvals, exchanges, etc." *See* R. Doc. 1 ¶¶ 39, 43; *see also* R. Doc. 10-5, at 6–17.

In January of 2024, Williams sent "orders" to Wings related to Knapp's mortgage loan and HELOC. *See* R. Doc. 1, ¶¶ 39–40; R. Doc. 10-5. Knapp alleges these "orders" included an "unconditional tender of payment in accordance with UCC 3-603," "a payment for US dollars," and "an unconditional order to pay." R. Doc. 1, ¶¶ 47, 49–50. The Complaint also alleges Knapp "submitted another entire promissory note in order to perform on the mortgage." *Id.* ¶ 60. It appears the theory in Knapp's Complaint is that, by signing the documents included in the "orders" with a "special indorsement," he converted the documents to "negotiable instruments" which constitute "payment in US dollars" and thereby satisfy his loans with Wings. *See id.* ¶¶ 15, 49, 74–75. Williams describes this case as their "first

4

official case for infinite money."[2] *See* Williams & Williams Law Group, Current and Previous Litigation, https://www.williamsandwilliamslawfirm.com/current-and-previous-litigation (last visited Jan. 22, 2025).

## II. PROCEDURAL HISTORY

Knapp initiated this lawsuit by filing a copy of the Complaint in United States District Court for the District of Minnesota on February 12, 2024, raising a number of claims against Wings. R. Doc. 1. Knapp's Complaint asserted state-law claims for breach of contract (Count 1) and breach of fiduciary duties (Count 2), and federal claims for violation of 12 U.S.C. § 504 (Count 3), violation of securities-related criminal statutes (Counts 4–6), and violations of Chapter 77 of Title 18 related to

---

[2] Williams holds himself out as able "to take on litigation" as an attorney-in-fact and lists this case as one of his cases on his website. *See* R. Doc. 1, ¶ 39; R. Doc. 10-5 (referencing Williams and Williams Law Group); Williams & Williams Law Group, How Litigation Works, https://www.williamsandwilliamslawfirm.com/how-litigation-works (last visited Jan. 22, 2025) (describing the types of cases he takes on, including how he expects a "VERY LARGE DOWN PAYMENT . . . DUE AT THE BEGINNING OF THE LAWSUIT" that can "range from $150,000-300,000," and that he will split the winnings of a lawsuit "50/50%"); *see also* Williams & Williams Law Group, Current and Previous Litigation, https://www.williamsandwilliamslawfirm.com/current-and-previous-litigation (last visited Jan. 22, 2025) (listing this case, as well as a similar case brought by Knapp and his wife against their former real-estate brokers); Williams & Williams Law Group, Questions and Answers, https://www.williamsandwilliamslawfirm.com/questionsandanswers (last visited Jan. 22, 2025) (stating that he is not licensed and is not a member of the bar, but that he is a lawyer and attorney—"A BAR Card lawyer is called an 'attorney-at-law.' A non-BAR attorney is called an 'attorney-in-fact.'"); Williams & Williams Law Group, Services, https://www.williamsandwilliamslawfirm.com/services (last visited Jan. 22, 2025) (laying out the "legal" services he offers and the fees he charges for those services).

5

peonage, slavery, and trafficking in persons (Counts 7–11). *See* R. Doc. 1. Knapp then attempted to serve Wings via mail. *See* R. Doc. 13, ¶ 2. Wings received a copy of the Summons and Complaint via mail on February 21, 2024. R. Doc. 21, ¶ 5.

On March 8, 2024, Wings served a copy of its Rule 11 Safe Harbor letter on Knapp. R. Doc. 27, ¶ 3; R. Doc. 27-1; R. Doc. 27-2. On March 9, 2024, Knapp responded to Wings' letter, indicating he planned on continuing with his frivolous lawsuit. R. Doc. 27, ¶ 6; R. Doc. 27-3. On March 13, 2024, Wings filed its Motion to Dismiss Knapp's Complaint and supporting documents. R. Doc. 7; *see also* R. Docs. 8–12.

Notably, in a similar case filed by Knapp and his wife against his real estate broker and agent, when the defendants did not respond to the complaint within 21 days of Knapp's attempted service by mail, Knapp and his wife brought a frivolous motion for default judgment. *See* R. Doc. 21-1.[3] While Wings had not yet been properly served pursuant to Fed. R. Civ. P. 4, in an effort to address the merits of the case and avoid a similar improper tactic by Knapp in this case, Wings brought its motion within 21 days of receipt of the Complaint in the mail. R. Doc. 21, ¶¶ 11–13.

---

[3] Knapp and his wife commenced a separate lawsuit in the District of Minnesota against Compass Minnesota, LLC and Daniel Phillip Hollerman, their real estate broker and agent, asserting similar claims to those asserted here. *See Knapp v. Compass Minnesota, LLC*, No. 24-cv-00100-SRN-DTS (D. Minn.). The district court dismissed that case as well, and this Court recently affirmed. *See id.*, Case No. 24-2722.

Apparently, Knapp was not satisfied with that action either and yet again responded with a frivolous motion, this time seeking to strike Wings' Motion to Dismiss. R. Doc. 13. Knapp subsequently personally served Wings with the Summons and Complaint on March 15, 2024. *See* R. Doc. 18-1.

Prior to filing its Motion to Dismiss, counsel for Wings reached out to Knapp to attempt to schedule a meet and confer. *See* R. Doc. 21, ¶ 6; R. Doc. 14. According to Knapp, he responded to this communication by informing counsel for Wings "that Service of Process had not yet been perfected, indicating that the 'meet and confer session would be more appropriately scheduled after the Service of Process was completed." *See* R. Doc. 13, ¶ 4. However, Knapp's actual email response stated, "I will entertain a meet and confer once I have submitted the Notice of Service of Process with the Court." *See* R. Doc. 21, ¶ 7; R. Doc. 14. Based on Knapp's response, Wings understood that he was not willing to meet and confer at that time. R. Doc. 21, ¶ 8. Wings proceeded to file its Motion, with the intent that a meet and confer could occur at a later date, if Knapp agreed to do so. *Id.* ¶ 9.

After Wings filed its Motion to Dismiss, Knapp filed a meritless Motion to Strike Wings' Motion to Dismiss and a meritless Motion for Sanctions against Attorney Tessa Mansfield Hirte on March 13, 2024. *See* R. Doc. 13; R. Doc. 16. Wings responded to both Motions. *See* R. Doc. 20; R. Doc. 22. Knapp did not file a direct response to Wings' Motion to Dismiss.

7

On April 18, 2024, Wings filed its Motion for Sanctions based on Rule 11. R. Doc. 24; *see also* R. Doc. 26. The next day, the District Court issued the following text order related to the pending motions and prohibiting future motions:

> The Court has reviewed the pending motions filed in this case. These include motions filed at Doc. Nos. [7], [13], [16], and [24]. It appears that all motions, with the exception of Defendant's Motion for Sanctions at Doc. No. [24], are fully briefed and ready for the Court's consideration. The Court will permit Plaintiff to file a response to Defendant's motion for sanctions. Once that motion is fully briefed, the Court will take all pending matters under advisement and will rule on the papers, without oral argument. *With the exception of Plaintiff's response brief noted above, the parties shall refrain from filing any additional motions until the Court rules on the motions presently on the docket.*

R. Doc. 29 (emphasis added).

On June 4, 2024, the Knapps' lawsuit against their real estate broker and agent was dismissed. *See Knapp v. Compass Minn., LLC*, No. 24-cv-00100 (SRN-DTS), 2024 U.S. Dist. LEXIS 98771, at *30 (D. Minn. June 4, 2024). In a detailed and well-reasoned opinion, Judge Susan Richard Nelson rejected similar claims brought by Knapp and his wife, dismissing those claims with prejudice. Apparently in response to losing his first case—and in violation of the District Court's order in this case—Knapp filed a Motion for Leave to Amend Plaintiff's Complaint for Damages on June 14, 2024. R. Doc. 31.

8

Knapp's proposed Amended Complaint contains no material changes to the allegations contained in the first 66 paragraphs of the Complaint. *Compare* R. Doc. 1, ¶¶ 1–66, *with* R. Doc. 31-1, ¶¶ 1–66. The Amended Complaint proposed to make the following changes:

1) Changes the term "special indorsement" to "qualified/special indorsement." *See* R. Doc. 31-1, ¶¶ 16–17, 19, 63, 78–79, 100, 102, and 104.

2) Alters the language used in the incorporation by reference paragraphs at the beginning of each count. *See, e.g.*, *id.*, ¶ 67.

3) Adds an allegation to the breach of fiduciary duties claim that Wings "is not a 'lender' after rescission of the blank indorsement was completed and the qualified/special indorsement replaced it. Any statements that a 'lender' does not have a fiduciary responsibility are irrelevant." *See id.*, ¶ 68.

4) Removes the initial Count 3, based on 12 U.S.C. § 504.

5) Relabels the initial Count 4, 18 U.S.C. § 1956 (Laundering of Monetary Instruments), and the initial Count 5, 18 U.S.C. § 2314 (Transportation of Stolen Securities), as a claim for money had and received with the same conspiracy-based allegations as before. *Compare* R. Doc. 1, ¶¶ 85–87, 89–92, *with* R. Doc. 31-1, ¶¶ 83–89. The only change to the

9

allegations is to add an assertion that further confirms the conspiracy-based nature of the claim, *see* R. Doc. 31-1, ¶ 87 (asserting that "transportation . . . under special negotiation . . . would have allowed for Preston Byron Knapp to benefit from the funds he created. Instead, those funds were carefully taken under coercion"), and to change the word "felony" to "claim." *See id.* ¶ 88.

6) Relabels the initial Count 6 based on 18 U.S.C. § 1348 (Securities and Commodities Fraud) as a claim for common law fraud. *Compare* R. Doc. 1, ¶¶ 94–101, *with* R. Doc. 31-1, ¶¶ 91–89. The only change to the allegations is swapping the word "felony" with the word "claim." *See* R. Doc. 31-1, ¶ 98.

7) Relabels the initial Count 7, based on 18 U.S.C. § 1581 (Peonage), as a claim based on 42 U.S.C. § 1994 (Peonage), incorporating two allegations under the initial Count 8, based on 18 U.S.C. § 1583 (Enticement into Slavery). *Compare* R. Doc. 1, ¶¶ 103–06, 108–09, *with* R. Doc. 31-1, ¶¶ 100–05. The only change to the allegations is swapping the word "(slavery)" with "This is peonage." *See* R. Doc. 31-1, ¶ 105.

8) Relabels the initial Count 8, based on 18 U.S.C. § 1583 (Enticement into Slavery), the initial Count 9, based on 18 U.S.C. § 1584 (Sale into

Involuntary Servitude), and the initial Count 10, based on 18 U.S.C. § 1589 (Forced Labor), as a claim for unlawful conversion. *Compare* R. Doc. 1, ¶¶ 110–12, 114–19, 122–25, *with* R. Doc. 31-1, ¶¶ 106–18. The only change to the allegations is in paragraph 112, which now alleges that: "While not <u>originally</u> legally theft, that transaction was not equal consideration. <u>Now that the blank indorsement has gone through rescission, these negotiable instruments are now stolen.</u>" *See* R. Doc. 31-1, ¶ 112 (additions underlined).

9) Relabels the initial Count 11, based on 18 U.S.C. § 1593A (Benefitting Financially from Peonage, Slavery, and Trafficking in Persons), as a claim for unjust enrichment. *Compare* R. Doc. 1, ¶¶ 128–32, *with* R. Doc. 31-1, ¶¶ 120–24. The only changes to the allegations are to add "unknowingly" before "released with a blank indorsement," *compare* R. Doc. 1, ¶ 129, *with* R. Doc. 31-1, ¶ 121, and make to changes to paragraph 124 so it now reads: "Due to lack of terms and communications, it is assumed that WINGS intends to entice its beneficiaries into <u>peonage</u> for financial gain <u>by having them fund their own loans</u>." *Compare* R. Doc. 1, ¶ 132, *with* R. Doc. 31-1, ¶ 124 (additions/changes underlined).

Appellate Case: 24-3359   Page: 25   Date Filed: 02/04/2025 Entry ID: 5482194

On November 4, 2024, the district court issued its Opinion and Order on all the pending motions. R. Doc. 35. The Court granted Wings' motion to dismiss, denied Knapp's motion to strike and motion for sanctions, denied Knapp's motion to amend as moot because it violated the district court's November 4 order, and granted in part and denied in part Wings' motion for sanctions. *Id.* at 1 n.1, 14. While the Court denied monetary sanctions, it did enjoin Knapp from "filing any civil action in this District Court against Wings or any affiliated parties, without first obtaining leave of Court." *Id.* at 14. Judgment was entered on November 5, 2024. R. Doc. 36.

The district court signed an Amended Memorandum Opinion and Order on November 7, 2024, but the only change in the Amended Memorandum Opinion and Order was a correction of the numbering of the paragraphs in the Order. *Compare* R. Doc. 35, at 14, *with* R. Doc. 37, at 14. On November 18, 2024, Knapp filed his Notice of Appeal. R. Doc. 39. This appeal follows.

## SUMMARY OF ARGUMENT

The district court properly dismissed Knapp's Complaint because it fails to articulate a cognizable claim for relief. Knapp and his wife borrowed money from Wings through a mortgage loan and home equity line of credit, which are secured by the property owned by Knapp and his wife. Knapp's claims are merely frivolous attempts to avoid paying Wings the amounts owed under the parties' binding contracts and are brought solely to harass Wings and advance the conspiracy theories of Knapp's "attorney-in-fact" Brandon Joe Williams. Knapp also failed to plead facts that would support the necessary elements of his claims, pleaded claims unsupported by the law, and sought to enforce federal statutes that either do not apply to Wings, contain no private right of action, or bear no logical connection to the facts pleaded.

The district court also correctly exercised its discretion in denying Knapp's motion to amend because it violated the district court's express order, and the proposed amendment was futile. Finally, the district court correctly granted Wings' motion for sanctions because Knapp willfully ignored legal precent indicating his claims were meritless.

## STANDARD OF REVIEW

This Court reviews orders granting a motion to dismiss de novo. *H & Q Props.
v. Doll*, 793 F.3d 852, 855 (8th Cir. 2015). This Court reviews a district court's
decision on application of its local rules, denial to amend a complaint, and decisions
to impose sanctions, whether under Rule 11 or Rule 37, for an abuse of discretion.
*Caranchini v. Nationstar Mortg., LLC*, 97 F.4th 1099, 1101 (8th Cir. 2024) (Rule
11); *Par. v. Wolfe Clinic, P.C.*, 70 F.4th 441, 449 (8th Cir. 2023) (motion to amend);
*Dockery v. Leonard*, 46 F. App'x 868, 868 (8th Cir. 2002) (Rule 37); *Silberstein v.
IRS*, 16 F.3d 858, 860 (8th Cir. 1994) (local rules).

14

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY GRANTED WINGS' MOTION TO DISMISS.

The district court properly dismissed Knapp's Complaint because it fails to articulate a cognizable claim for relief. Knapp's Complaint does not state a plausible claim against Wings but is instead based on conspiracy theories that courts around the country have repeatedly and resoundingly rejected. Wings and Knapp have entered into a number of binding agreements related to a mortgage loan and home equity line of credit, which are secured by the property owned by Knapp and his wife. Knapp's claims are merely frivolous attempts to avoid paying Wings the amounts owed under the parties' binding contracts and are brought solely to harass Wings and advance the conspiracy theories of Knapp's "attorney-in-fact" Brandon Joe Williams. The law offers no support for any of his claims, and the district court properly dismissed the Complaint for failure to state a claim.

### A. Legal Standard.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must establish sufficient facts that state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine if a claim is sufficient, the court accepts and treats all the factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Paisley Park Enterprises, Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 (D. Minn. 2019) (citing *Blankenship v. USA Truck,*

*Inc.*, 601 F.3d 852, 853 (8th Cir. 2010)). However, the court must disregard legal conclusions couched as fact, and merely reciting the elements of a cause of action is insufficient to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they must demonstrate a "right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.* at 555, 570.

While pro se complaints are liberally construed, even pro se litigants must set forth their claims "in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981). "[P]ro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). Pro se complaints "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (explaining that courts "will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded").

On a motion to dismiss, courts consider not only the complaint, but also materials that are necessarily embraced by the pleadings, which includes "documents incorporated into the complaint by reference." *Podraza v. Whiting*, 790 F.3d 828, 837 (8th Cir. 2015); *see also Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (explaining that "documents necessarily embraced by the

complaint are not matters outside the pleading"). "In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss. This is true even if contract documents not attached to the complaint refute a breach-of-contract claim, or a claim that defendant breached a statutory or common law duty." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation and quotation omitted); *see also Iqbal*, 556 U.S. at 678 (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (quotation omitted)).

### B. The District Court Properly Dismissed Counts 1 and 2 Because They are Based on Meritless Conspiracy Theories.

Knapp's Count 1 claim for breach of contract and Count 2 claim for breach of fiduciary duty were properly dismissed because both are premised upon conspiracy theories that have been repeatedly rejected by federal courts.

Counts 1 and 2 appear to be based on a theory often referred to as the "vapor money" theory. *See* R. Doc. 37, at 5. The vapor money theory posits "that promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010).

> Bolstering this argument (at least for its adherents) is the fact that once received, banks typically deposit promissory notes into their own accounts and list them as assets. Then, according to the vapor money theory, the bank purports to

17

> lend the "money" that was "created" by the citizen's signature back to the citizen-borrower.

*Id.*

Knapp's Complaint appears to rely on a form of the "vapor money" theory, under which Knapp apparently believes that by sending Wings documents containing his signature and specific language (which he refers to as a "special indorsement"), he can then convert various documents, including the notes underlying the Mortgage and HELOC, an additional "promissory note" he created, and the monthly billing statements sent by Wings (which he claims are "bills of exchange") into "negotiable instruments," which he can then use as payments to satisfy his debts to Wings.[4] *See* R. Doc. 1, ¶¶ 23, 30–34.

---

[4] Knapp appears to assert that Wings exchanged the original loan documents he signed for Federal Reserve Notes (i.e., paper US currency) pursuant to 12 U.S.C. § 412, and that by sending Wings "orders" with his signature and a "special indorsement" those Federal Reserve Notes are then used to payoff his loans. *See* R. Doc. 1, ¶ 15 ("Proper performance would have been to indorse the original collateral securities under special negotiation, prior to them being exchanged for Federal Reserve Notes."); *Id.* ¶ 49 ("Due to the original application having already been swapped for Federal Reserve Notes after the application was indorsed with a blank indorsement, the orders inside the parcel were a payment for US dollars."); *see also id.* ¶¶ 29, 74. In addition to being based on conspiracy theories universally rejected by the federal courts, the underlying premise that Wings can obtain Federal Reserve Notes pursuant to 12 U.S.C. § 412 is false. Section 412 requires that an application for Federal Reserve Notes be made by a "Federal Reserve bank." Clearly, Wings is not a "Federal Reserve bank," and thus Section 412 is inapplicable to it. *See, e.g.*, 12 U.S.C. § 225 (requiring federal reserve banks to "include in its title the name of the city in which it is situated, as 'Federal Reserve Bank of Chicago'").

Appellate Case: 24-3359     Page: 32     Date Filed: 02/04/2025 Entry ID: 5482194

Federal courts have widely and universally rejected the theories underlying Knapp's allegations for decades. For example, in *Demmler v. Bank One NA*, 2006 U.S. Dist. LEXIS 9409, *3 (S.D. Oh. Mar. 9, 2006), the plaintiff obtained a loan that was secured by a mortgage on his real property. *Id.* When the plaintiff defaulted on the loan, the defendant initiated foreclosure proceedings. *Id.* The plaintiff sued the defendant alleging twenty-one causes of action related to the note and mortgage. *Id.* The court explained the basic theory behind the plaintiff's complaint as follows:

> [A]ll of Plaintiff's claims, federal and state, stem from the same basic premise. Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He contends that Bank One took his "money," i.e., the promissory note, deposited it into its own account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He contends that Bank One did not actually have the funds available to lend to him, but instead "created" the money through its bookkeeping procedures.

*Id.* at *10–11.

The court dismissed the entire case, noting that the plaintiff provided "no authority for this patently ludicrous argument" and that "[s]imilar arguments have been rejected by federal courts across the country." *Id.* at *11. The court further explained, "While a promissory note may be a negotiable instrument, the note itself is not 'money.' It is nothing more than the acknowledgment of a debt and a promise to repay the debt at some date in the future." *Id.* at *13-14. *See also* R. Doc. 37, at 6 (collecting cases); *McLaughlin*, 726 F. Supp. 2d at 214 (rejecting plaintiff's claims

under the "Redemptionist" theory, the "vapor money" theory; and the "unlawful money" theory, and noting "all three of these theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years"); *Harp v. Police*, No. 23-2577, 2023 U.S. Dist. LEXIS 139418 (E.D. Pa. Aug. 10, 2023) ("[O]ther courts nationwide have rejected such 'frivolous' attempts to satisfy a debt through a fictitious 'bill of exchange.'"); *Rabbe v. Wells Fargo Home Mortg., Inc.*, No. 8:17-CV-131, 2017 U.S. Dist. LEXIS 88910, at *4 (D. Neb. June 9, 2017) ( "The plaintiffs' particular permutation is commonly referred to as a 'vapor money' or an 'unlawful money' claim, and has been uniformly rejected by every court to consider it."); *Hennis v. Trustmark Bank*, 2010 U.S. Dist. LEXIS 45759, *16 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous.").

Similar to the claims in *Demmler* and related authorities, Knapp's claim that by submitting a "special indorsement" he somehow converted the original notes and monthly billing statements into legal tender is patently ludicrous and frivolous. Consequently, Knapp's claims of breach of contract and breach of fiduciary duty were properly dismissed with prejudice.

20

### C. The District Court Also Properly Dismissed Count 1 Because Knapp Did Not Identify Any Provisions Within the Parties' Contracts That Wings Allegedly Breached.

In addition to being based on meritless conspiracy theories, Knapp's breach of contract claim was also properly dismissed because he failed to identify any contract or contractual provision that has allegedly been breached. Breach of contract is a state law claim to which federal courts apply Minnesota law. *See Bores v. Domino's Pizza, LLC*, 530 F.3d 671, 674 (8th Cir. 2008). "A breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of the contract." *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (citations omitted). "[A] plaintiff does not get to wait until discovery to identify what promises the defendant has breached." *Gillis v. Principia Corp.*, 832 F.3d 865, 872 n.11 (8th Cir. 2016). At a minimum, the complaint must "cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient." *Id.* (quotations omitted); *see also Hopper v. BMO Harris Bank, N.A.*, No. 22-1828 (JRT/JFD), 2023 U.S. Dist. LEXIS 133755, at *8 (D. Minn. Aug. 2, 2023) ("To plausibly plead breach of contract, it is not enough to allege that the defendants acted contrary to an agreement. The plaintiff must allege sufficient details for the Court to infer that a material term of the contract has been breached.").

21

At a basic level, Knapp's breach of contract claim fails to identify any contact or contractual provision that has allegedly been breached. *See generally* R. Doc. 1. In Count 1, Knapp alleges that he submitted a promissory note to Wings "in order to perform on the mortgage" and alleges that Wings ignored that "tender." *Id.* ¶¶ 60–61. While unclear, it appears Knapp is alleging that he fulfilled his obligations regarding his loans with Wings by providing Wings with a "promissory note." Knapp's Complaint does not identify what provision(s) in any of his contracts were breached or what language within those contracts would require Wings to accept this alleged "promissory note" as the payment he is required to make under the terms of both loans. *See* R. Doc. 37 at 6–7. To the contrary, the Mortgage and underlying note require Knapp to repay the loan in the form of cash, check or money order and make payments "in U.S. currency." *See* R. Doc. 10-2, at 1; R. Doc. 10-1, at 2–3. Nowhere in the Mortgage, HELOC, or related loan documents does it state that Wings is required to accept a fictitious "promissory note" or "bill of exchange" in lieu of payment.

Courts have rejected similar claims on numerous occasions. For example, in *Harp*, 2023 U.S. Dist. LEXIS 139418 at *2, the plaintiff attempted to pay her credit card bill by submitting to the defendant credit union a "bill of exchange" that "was fashioned from the Enclosure Form sent with her credit card statement, on which [the plaintiff] indicated that the 'Amount Enclosed' was $5,480.46, with notations

stating 'ACCEPTED,' 'PAY TO BEARER,' 'PAY WITH INTEREST,' and 'PAY ON DEMAND.'" Along with the "bill of exchange", the plaintiff sent a letter claiming, "I have performed my contractual obligations by remitting payment via bill of exchange as collateral security and legal tender." *Id.* at *2–3. When the credit union refused to accept the "bill of exchange" as legal tender, the plaintiff sued the credit union asserting, among other claims, breach of contract. *Id.* at *4. The court dismissed the breach of contract claim, noting that the terms of the plaintiff's account agreement gave the credit union discretion to refuse any financial instrument presented for deposit. *Id.* at *8. The court further found that, even if the terms of the agreement did not give the credit union such discretion, the "bill of exchange" presented by the plaintiff clearly was not valid legal tender, explaining:

> In other circumstances, a bill of exchange is certainly a valid financial instrument, often used to keep track of debt in international trade. … But here, rather than a legally enforceable document noting an existing debt that PFFCU owed to her, Harp simply handwrote an array of financial buzzwords on her credit card statement and tried to pass this off to PFFCU as valid legal tender for her credit card debt. This is not a valid financial instrument, and other courts nationwide have rejected such "frivolous" attempts to satisfy a debt through a fictitious "bill of exchange."

*Id.* at *8–9.

Similar to the "bill of exchange" in *Harp*, Knapp's "promissory note", "bills of exchange", and "special indorsements" are not valid financial instruments, and Wings was not required to accept them under the terms of Knapp's loan agreements.

23

The entire theory underlying Knapp's breach of contract claim is frivolous and unsupported by both the law and the factual allegations and the district court properly dismissed this claim.

### D. The District Court Also Properly Dismissed Count 2 Because Wings Does Not Owe Knapp Fiduciary Duties and Knapp Failed to Identify Any Actions That Would Constitute a Breach.

Knapp's breach of fiduciary duty claim also fails because Wings does not owe Knapp fiduciary duties, and the Complaint does not identify actions that would constitute a breach of fiduciary duties. Knapp alleges that Wings "has a fiduciary duty to [his] financial success," "is paid to ensure the law is correctly applied in respect to" him, and that Wings never mentioned to him "the benefits of special indorsements," claiming that "[t]his breach of fiduciary duty has caused years of anxiety over the extraneous paying of bills that is entirely unnecessary." R. Doc. 1, ¶¶ 69–70, 78, 80. This claim is meritless.

First, Wings does not owe Knapp fiduciary duties. *See Roers v. Countrywide Home Loans, Inc.*, 728 F.3d 832, 838 (8th Cir. 2013) ("The general rule in Minnesota is that lenders bear no fiduciary duty to borrowers." (quotation omitted)); *see also Impulse Trading v. Norwest Bank Minn., N.A.*, 870 F. Supp. 954, 961 (D. Minn. 1994) ("The relationship between a bank and its customer is one of debtor and creditor, with the customer as the creditor and the bank the debtor. This relationship is not one of agent and principle and therefore does not give rise to a fiduciary

relationship." (citation omitted)). Knapp's relationship with Wings is contractual, not fiduciary.

Second, Knapp fails to identify any actions that would constitute a breach of fiduciary duty, if such a duty existed. Knapp's breach of fiduciary duty claim appears to be based on his theory that he can do a "special indorsement" on certain documents and somehow that constitutes payment of his loans with Wings. Knapp seems to assert that Wings should have advised him regarding his ability to do a "special indorsement." *See* R. Doc., ¶¶ 15–19, 45, 49, 51–54, 74–80. As explained above, Knapp's theory regarding a "special indorsement" is meritless, and therefore cannot support a claim for breach of fiduciary duty.

### E. The District Court Properly Dismissed Count 3, based on 12 U.S.C. § 504, because the Statute Does Not Apply to Wings, the Statute Does Not Provide a Private Right of Action, and Knapp Failed to Plead Facts that Would Support Imposition of a Civil Penalty.

Knapp's federal claims fare no better than his state law claims. His first federal claim—that Wings is subject to a civil penalty pursuant to 12 U.S.C. § 504—is frivolous. Section 504 provides civil penalties for any "member bank" which engages in certain conduct. A "member bank" is "any national bank, State bank, or bank or trust company which has become a member of one of the Federal reserve banks." 12 U.S.C. § 221. Wings is not a "national bank, State bank, or bank or trust company." It is a state-chartered credit union organized pursuant to Chapter 52 of Minnesota Statutes, and thus cannot be "a member of one of the Federal reserve

25

banks." *See id.*; *see also* Minn. Stat. § 52.001 (defining credit union as "a cooperative, not-for-profit financial institution formed and operating under this chapter"); Minn. Stat. § 52.01 (providing the manner of organization for a Minnesota credit union). Thus, the district court properly dismissed this claim because Wings is not subject to the requirements of Section 504. *See* R. Doc. 37, at 7.

Moreover, section 504 does not provide a private right of action. *See* 12 U.S.C. § 504(e) (providing that penalties shall be assessed and collected by either the Comptroller of the Currency or the Federal Reserve Board); *see also Harp*, 2023 U.S. Dist. LEXIS 139418, at *12 (holding that "the imposition of civil penalties under [12 U.S.C. § 504] is carried out by federal officials, and private individuals do not have a private right of action to enforce [12 U.S.C. § 504] of the Federal Reserve Act"). Knapp is not a federal official and he does not have the authority to impose civil penalties under section 504. *See* R. Doc. 1, ¶ 5 (alleging that he is "a person residing in Hennepin County, Minnesota").

Finally, Knapp failed to plead facts supporting a violation of Section 504. Knapp alleges that Section 504 "is involved because WINGS never attempted to work with Preston Byron Knapp's performance." Such an allegation does not amount to a violation of the Federal Reserve Act. Section 504 provides for several different tiers of violations, subject to different penalties. *See* 12 U.S.C. § 504. Subsection (a) provides that, "Any member bank which . . . violates any provision

26

of section 371c, 371c–1, 375, 375a, 375b, 376, or 503 of this title, or any regulation issued pursuant thereto, shall forfeit and pay a civil penalty of not more than $5,000 for each day during which such violation continues." *Id.*, (a). Sections 371c and 371c-1 relate to affiliate transactions, Section 375 is blank (reserved for future use), Sections 375a and 375b relate to loans and extension of credit to executive officers, Section 376 relates to the interest rates paid to directors, officers, attorneys, and employees, and Section 503 imposes liability for directors and officers for violations of sections 375, 375a, 375b, and 376. None of the allegations in the Complaint bear any logical connection with these sections of the Act.

Subsection (b) provides liability for committing a violation described in subsection (a), recklessly engaging "in an unsafe or unsound practice in conducting the affairs of such member bank" or breaching a fiduciary duty, if such violation, practice, or breach is: "(A) is part of a pattern of misconduct; (B) causes or is likely to cause more than a minimal loss to such member bank; or (C) results in pecuniary gain or other benefit to such party." *Id.* § 504(b). Knapp does not allege a violation of subsection (a) or that Wings engaged in an unsafe or unsound practice, and as explained above, Wings neither owes Knapp fiduciary duties nor breached such non-existent duties to him. Subsection (c) provides similar liability where such conduct "knowingly or recklessly causes a substantial loss to such credit union or a substantial pecuniary gain or other benefit to such party by reason of such violation,

27

practice, or breach." *Id.* § 504(c). Knapp's Complaint does not allege facts which, if true, would amount to a violation of Section 504, and thus the Complaint fails to identify any actions by Wings that would lead to imposition of a penalty under section 504, even if it applied.

Section 504 does not apply to Wings, Knapp cannot enforce Section 504, and his Complaint fails to allege facts that, if true, would support a violation of Section 504. The district court properly dismissed this count, and this Court should affirm.

### F. The District Court Properly Dismissed Counts 4, 5, and 6 Because Knapp, as a Private Citizen, Cannot Enforce Criminal Statutes.

Next, Knapp's Counts 4, 5, and 6 also fail as a matter of law because they are all based on alleged violations of criminal statutes.

Count 4 is based on 18 U.S.C. § 1956 (Laundering of Monetary Instruments), Count 5 is based on 18 U.S.C. § 2314 (Transportation of Stolen Securities), and Count 6 is based on 18 U.S.C. § 1348 (Securities and Commodities Fraud). As a private citizen, Knapp does not have standing to bring these claims. *See Diamond v. Charles*, 476 U.S. 54, 64 (1986) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." (quotation omitted)); *Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1062 (D. Minn. 2009) ("A private citizen does not have standing either to enforce federal criminal statutes or to have such statutes enforced."); *cf. United States ex rel. Burnette v. Driving Hawk*, 587 F.2d 23,

Appellate Case: 24-3359     Page: 42     Date Filed: 02/04/2025 Entry ID: 5482194

25 (8th Cir. 1978) ("Where sanctions for violation of a statute are clearly criminal, they are beyond the scope of Qui tam proceedings.").

These claims also fail because there is no private right of action under these statutes. In determining if a statute provides a private right of action, courts look to congressional intent to see if a private right of action was contemplated by Congress. *Frison v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003). If such intent cannot be inferred from the statutory language, its structure, or some other source, there is no private right of action. *Id.* The presence of a criminal statute neither creates nor implies a corresponding private right of action. *See United States v. Wadena*, 152 F.3d 831, 845–46 (8th Cir. 1998). Only the United States attorney has the right to assert claims under Title 18. *See* 28 U.S.C. § 547(a) ("[E]ach United States attorney, within his district, shall . . . prosecute for all offenses against the United States.").

Numerous courts have found there is no private right of action under these statutes. *See Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) (finding § 1956 does not provide private right of action); *Selmon-Austin El v. Wells Fargo Bank*, No. 2:19-cv-02538-JTF-cgc, 2020 U.S. Dist. LEXIS 61713, at *10 (W.D. Tenn. Mar. 12, 2020) (citing a number of cases holding § 1956 does not provide a private right of action); *Barrett v. City of Allentown*, 152 F.R.D. 50, 56 (E.D. Pa. 1993) (no civil action available under § 1956); *Klein v. Sutro Bros. & Co.*, No. 69 Civ 3693., 1970 U.S. Dist. LEXIS 13072, at *4 (S.D.N.Y. Jan. 26,

1970) (no private right of action exists under § 2314); *Carroll v. United States Equities Corp.*, No. 1:18-CV-667, 2020 U.S. Dist. LEXIS 258605, at *49 (N.D.N.Y. Nov. 30, 2020) (no independent civil claim exists under 18 U.S.C. § 2314); *Barringer v. Ohio*, No. 3:23 CV 1530, 2023 U.S. Dist. LEXIS 216430, at *3 (N.D. Ohio Dec. 5, 2023) (no private right of action under § 1348); *Francis v. Fannie Mae*, No. 20-CV-5863(EK)(LB), 2021 U.S. Dist. LEXIS 48595, at *5 (E.D.N.Y. Mar. 15, 2021) (same).

Finally, even if Knapp could assert a claim for a violation of Section 1348, such claim is not pleaded with the particularity required by Fed. R. Civ. P. 9(b). When alleging fraud or mistake, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The complaint must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020). Here, Knapp's only assertion of fraud is that fraud resulted "due to complete failure to disclose the terms and options of signing/indorsing above collateral securities." R. Doc. 1, ¶ 98. Knapp's cursory assertion of fraud is not pleaded with sufficient particularity to comply with requirements of the federal rules—it does not identify the time, place, or contents of the misrepresentation, or the identity of the person making it.

Knapp's claims under Title 18 fail to state a claim for which relief can be granted, because he does not have standing to prosecute federal criminal statutes, there are no private rights of action under the referenced statutes, and his claim for fraud was not plead with sufficient particularity. The district court properly dismissed these claims with prejudice.

### G. The District Court Also Properly Dismissed Counts 7–11 Because the Facts Alleged Have No Connection to the Claims Asserted.

Knapp's final set of claims are all based on Chapter 77 of Title 18 of the US Code, which deals with the federal crimes of peonage, slavery, and trafficking in persons. Knapp's Count 7 asserts a violation of 18 U.S.C. § 1581 (Peonage), Count 8 asserts a violation of 18 U.S.C. § 1583 (Enticement into Slavery); Count 9 asserts a violation of 18 U.S.C. § 1584 (Sale into Involuntary Servitude); Count 10 asserts a violation of 18 U.S.C. § 1589 (Forced Labor); and Count 11 asserts a violation of 18 U.S.C. § 1593A (Benefitting Financially from Peonage, Slavery, and Trafficking in Persons). None of the facts in Knapp's Complaint bear any logical connection to these claims and they fail as a matter of law.

> Peonage is 'compulsory service in payment of a debt'" and
> "'compulsory service' is the equivalent of 'involuntary servitude', which the Supreme Court has defined as 'a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process.'

*United States v. Farrell*, 563 F.3d 364, 372 (8th Cir. 2009) (quoting *Bailey v.*

31

*Alabama*, 219 U.S. 219, 242 (1911)) (cleaned up) (noting that threatening to put workers who "run away" in a balikbayan box and ship them back to the Philippines was a threat of physical force).

Section 1583 (Enticement into Slavery) and section 1584 (Sale into Involuntary Servitude) address very similar conditions. "The essence of a holding in involuntary servitude is the exercise of control by one individual over another so that the latter is coerced into laboring for the former." *United States v. Mussry*, 726 F.2d 1448, 1452 (9th Cir. 1984); *see also Saraswat v. Bus. Integra, Inc.*, No. 15-CV-4680 (PKC) (LB), 2019 U.S. Dist. LEXIS 70054, at *17 (E.D.N.Y. Apr. 25, 2019) (explaining that "Civil liability for forced labor under § 1589 requires a finding, by a preponderance of the evidence, that the defendant 'knowingly provide[d] or obtain[ed] the labor or services of a person' by means of: (1) force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) serious harm or threats of serious harm to that person or another person; (3) the abuse or threatened abuse of law or legal process; or (4) any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint"); *Aragon v. Ku*, 277 F. Supp. 3d 1055, 1069 (D. Minn. 2017) (explaining that the purpose of Section 1589 "is to combat trafficking in persons, a contemporary

32

manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers").

Knapp's allegations do not state a claim for violations of Sections 1581, 1583, 1584, 1589, or 1593A.[5] Knapp alleges that these statutes apply because he must work in order to pay back the loans he obtained from Wings and feared losing his home if he failed to make payments on the loans. *See* R. Doc. 1, ¶¶ 103, 108–09, 112, 119, 122, 125, 130; *see also id.* ¶ 117 (acknowledging that the transaction was "not legally theft"). Such allegations are wholly inadequate to state claims under any of the alleged statutes, as the Ninth Circuit has explained:

> We recognize that economic necessity may force persons to accept jobs that they would prefer not to perform or to work for wages they would prefer not to work for. Such persons may feel coerced into laboring at those jobs. That coercion, however, results from societal conditions and not from the employer's conduct. Only improper or wrongful conduct on the part of an employer subjects him to prosecution. To illustrate this point further, an employer who truthfully informs an individual that there are no other available jobs in the market, merely provides an opportunity for a person to work for low wages, or simply takes advantage of circumstances created by others is not

---

[5] Liability under Section 1593A requires receiving a benefit "from participation in a venture which has engaged in any act in violation of this chapter, knowing or in reckless disregard of the fact that the venture has engaged in such violation." 18 U.S.C. § 1593A. As Knapp's Complaint contains no allegations that Wings violated any provisions of Chapter 77 of Title 18 of the US Code and contains no allegations Wings participated in a venture which engaged in such violations (much less knowingly or in reckless disregard of such violations), Knapp's Complaint fails to state a claim under Section 1593A as well.

33

> guilty of an offense. An employer who has not engaged in
> improper or wrongful conduct has not violated the law.

*Mussry*, 726 F.2d at 1453; *see also Heart of Atlanta Motel v. United States*, 379 U.S. 241, 244, 261 (1964) (rejecting the contention that "by requiring appellant to rent available rooms to Negroes against its will, Congress is subjecting it to involuntary servitude"). Rather, "courts assessing claims concerning § 1583's prohibition against slavery and § 1584's similar prohibition against involuntary servitude make clear that circumstances running afoul of those provisions are typically 'limited to labor camps, isolated religious sects, or forced confinement.'" *Tegete v. Maryknoll Sisters of Saint Dominic, Inc.*, No. 20-CV-5023 (CS), 2023 U.S. Dist. LEXIS 43034, at *38 (S.D.N.Y. Mar. 14, 2023) (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 540 (3d Cir. 2012)).

There is simply no question that Knapp—who had sufficient assets and income to obtain a loan of over $1 million to purchase his house—is not being subjected to peonage, slavery, involuntary servitude, or forced labor, simply because Wings is requiring him to pay back his loans. Knapp's Chapter 77 claims are utterly absurd on their face, and the district court properly dismissed them with prejudice.

## H. Knapp's Challenges to the District Court's Dismissal of His Complaint are Meritless.

Knapp's brief before this Court does not address the district court's reasoning regarding why it dismissed his Complaint, instead raising several new arguments

34

that were not raised below and are therefore forfeited. *See Perry v. Precythe*, 121 F.4th 711, 716 (8th Cir. 2024) (explaining that arguments not raised below are generally forfeited on appeal). Even if the Court were to entertain Knapp's arguments, they are meritless.

Although not clear, Knapp appears to be raising three arguments related to the district court's granting of Wings' Motion to Dismiss: (1) the district court did not enforce the Local Rule 7.1 meet and confer requirement;[6] (2) the district court did not liberally construe his Complaint;[7] and (3) the district court erred in considering Attorney Hirte's affidavit and attached documents.[8] None of these arguments have merit, and Knapp forfeited the first and third arguments by failing to raise them below.

### 1. *Wings Complied with District of Minnesota Local Rule 7.1.*

District of Minnesota Local Rule 7.1(a) requires parties to meet and confer prior to filing a motion, other than a motion under Rule 56 or for a temporary restraining order, and to attempt to resolve the issues raised in the motion. *See* D. Minn. LR 7.1(a). The moving party is also required to file a meet-and-confer statement.

---

[6] *See* Appellant's Br. at 10–13.
[7] *See* Appellant's Br. at 14, 17.
[8] *See* Appellant's Br. at 14–16.

Appellate Case: 24-3359     Page: 49     Date Filed: 02/04/2025 Entry ID: 5482194

Knapp never argued to the district court that Wings failed to comply with Local Rule 7.1. By failing to raise the argument below, Knapp has forfeited the argument upon appeal, and none of the limited circumstances where this Court will consider a forfeited argument apply here. *See Gap, Inc. v. Gk Dev., Inc.*, 843 F.3d 744, 748-49 (8th Cir. 2016) (explaining this Court has the discretion to consider an issue raised for the first time on appeal if "the proper resolution is beyond any doubt" or "the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case"). District courts have broad discretion to determine whether to overlook departures from local rules and to decide how to apply their local rules, including Local Rule 7.1. *See Huggins v. FedEx Ground Package Sys.*, 592 F.3d 853, 856 (8th Cir. 2010) (explaining that "district courts have broad discretion to manage their dockets and address particular circumstances by enforcing local rules and by setting enforceable time limits"); *see also Silberstein v. IRS*, 16 F.3d 858, 860 (8th Cir. 1994) (noting that "it is for the district court to determine what departures from its rules may be overlooked"); *cf. Heide v. LaHood*, 406 F. App'x 83, 83 (8th Cir. 2010).; *see also P Park Mgmt., LLC v. Paisley Park Facility, LLC*, No. 21-2128 (MJD/JFD), 2022 U.S. Dist. LEXIS 194533, at *29 (D. Minn. Oct. 26, 2022) (overlooking failure to comply with D. Minn. LR 7.1(a) and simply reminding party to comply in the future); *First Fin. Sec., Inc. v. Mai Lee*, No. 14-CV-1843 (PJS/SER), 2016 U.S. Dist. LEXIS 29585, at *21-

36

22 n.10 (D. Minn. Mar. 8, 2016) (noting the lack of authority that a motion filed in violation of the meet-and-confer requirement must be denied and explaining that the magistrate appropriately exercised his discretion in excusing the failure to comply due to the other party's failure to respond in good faith).

In addition, Wings filed the required meet-and-confer statement with its motion to dismiss. *See* R. Doc. 11. While counsel for Wings was unable to meet with Knapp prior to filing its motion, counsel did reach out to Knapp to request a telephone call to meet and confer, and Knapp responded that he "will entertain a meet and confer once [he has] submitted the Notice of Service of Process with the Court." *Id.* Based on Knapp's response, Wings was unable to meet and confer with Knapp prior to filing its motion, but *Knapp's* refusal to meet with Wings does not equate to Wings not complying with Local Rule 7.1(a). *Id.*

### 2. *The district court liberally construed Knapp's Complaint.*

Next, Knapp claims that the district court did not liberally construe his Complaint. *See* Appellant's Br. at 14, 17. To the contrary, the district court explicitly recognized that it was obligated to liberally construe both pro se complaints and pro se motions. *See* R. Doc. 37 at 5, 11. But while pro se complaints are to be liberally construed, even pro se litigants must set forth their claims "in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Cunningham*, 648 F.2d at 1186. And pro se complaints "still must allege sufficient facts to support the claims

37

advanced." *Stone*, 364 F.3d at 914. Even liberally construed, Knapp's Complaint failed to state a claim and was correctly dismissed.

### 3. The district court properly considered the documents embraced by the Complaint.

Knapp's final new argument challenging the district court's consideration of the documents submitted by Attorney Hirte is both forfeit and meritless. *See* Appellant's Br. at 14–16. As with Knapp's Rule 7.1 argument, his challenge to the district court's consideration of the loan documents he and his wife signed was not raised before the district court and is therefore forfeit.

On a motion to dismiss, courts consider not only the complaint, but also "materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quotation omitted); *see also Podraza*, 790 F.3d at 837 (8th Cir. 2015) (explaining that materials necessarily embraced by the pleadings includes "documents incorporated into the complaint by reference"); *Ashanti*, 666 F.3d at 1151 (explaining that "documents necessarily embraced by the complaint are not matters outside the pleading"). "In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss. This is true even if contract documents not attached to the complaint refute a breach-of-contract claim, or a claim that defendant breached a statutory or common law duty." *Zean*, 858 F.3d at 526 (citation and quotation omitted).

38

The documents Wings submitted in support of its motion to dismiss are the mortgage loan and home equity line of credit documents between the Knapps and Wings that Knapp sought to discharge, and his Complaint made specific reference to both the mortgage loan and home equity line of credit. *See* R. Doc. 1, ¶¶ 10–11. Accordingly, the district court properly considered the loan documents submitted by Wings.

## II. THE DISTRICT COURT CORRECTLY EXERCISED ITS DISCRETION IN DENYING KNAPP'S MOTION TO AMEND.

The district court correctly exercised its discretion in denying Knapp's motion to amend for two reasons: 1) because it violated the district court's express order that the parties refrain from any further filings; and 2) because the proposed amended was futile.

### A. The District Court Properly Denied Knapp's Motion to Amend for Violating the Court's Order to Refrain from Filing Further Motions and As Moot.

On April 19, 2024, the district court ordered the parties to "refrain from filing any additional motions until the Court rules on the motions presently on the docket." R. Doc. 29. Knapp's motion to amend violated this order, without providing any justification for the violation, or indeed, even *acknowledging* the order. The district court properly denied Knapp's motion for violating this order, and as moot given the court's granting of Wings' motion to dismiss. *See* R. Doc. 37, at 1 n.1; *cf. Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay

39

proceedings as an incident to its power to control its own docket."); *Roehrs v. Walstrom*, No. 0:23-cv-01885-SRN-DLM, 2024 U.S. Dist. LEXIS 102, at *12 (D. Minn. Jan. 2, 2024) ("District courts have this inherent authority to temporarily stay cases as part of their power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (quotation omitted)).

**B.  The District Court Properly Denied Knapp's Motion to Amend as Futile.**

Even if the district court had considered Knapp's proposed amendment on the merits, his motion was futile because none of the changes in the proposed Amended Complaint fix any of the fatal flaws in Knapp's initial Complaint. "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim. A district court thus may deny a motion to amend a complaint when such an amendment would be futile." *Plymouth Cty. v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014) (citation omitted). Knapp's motion papers offer no explanation for how the proposed Amended Complaint "would be able to save an otherwise meritless claim," and an examination of the proposed changes fails to reveal any viable legal theory.

In a number of paragraphs, Knapp's proposed Amended Complaint changes the term "special indorsement" to "qualified/special indorsement." *See* R. Doc. 31-1, ¶¶ 16–17, 19, 63, 78–79, 100, 102, and 104. The addition of the word "qualified"

40

does not change the viability of his claims—they are still based on a conspiracy theory that has been widely and universally rejected by federal courts for decades. *See* Part I.B., *supra*.

Knapp's proposed changes to his Count 2 claim for breach of fiduciary duty are likewise futile. The proposed Amended Complaint adds an allegation that Wings "is not a 'lender' after rescission of the blank indorsement was completed and the qualified/special indorsement replaced it. Any statements that a 'lender' does not have a fiduciary responsibility are irrelevant." *See* R. Doc. 31-1, ¶ 68. This new allegation is nonsensical and does not alter the legal analysis above that, as a matter of law, Wings does not owe Knapp fiduciary duties. It is plain from the legal documents Knapp and his wife signed that Wings is, in fact, the lender in the parties' contractual relationship. Wings argument that its relationship with Knapp is contractual, not fiduciary, equally applies to the proposed amended complaint and is supported by federal interpretations of Minnesota state law. *See* Part I.D, *supra*. Additionally, the proposed Amended Complaint still fails to identify actions that would constitute a breach of fiduciary duties. *See id.*

Knapp's proposed Amended Complaint also removes his explicit claim for relief under 12 U.S.C. § 504. This change again does not alter the fact that his proposed Amended Complaint is still based on a meritless conspiracy theory. Dropping this particular claim does not salvage an otherwise meritless Complaint.

41

Next, Knapp relabels his initial Count 4, 18 U.S.C. § 1956 (Laundering of Monetary Instruments), and initial Count 5, 18 U.S.C. § 2314 (Transportation of Stolen Securities), as a claim for money had and received, while retaining the same conspiracy-based allegations as before. This proposed change is futile for two main reasons. First, as is evident from the allegations in the proposed Amended Complaint, it is based on the same baseless conspiracy theory that the district court recently rejected when granting Wings' motion to dismiss. Second, the relationship between Knapp and Wings is governed by the contracts he and his wife signed, and there can be no claim for equitable relief where the parties' rights and duties are delineated by contract. *See Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (explaining that unjust enrichment "does not apply when there is an enforceable contract that is applicable").

Knapp's next change is to relabel his initial Count 6, which is based on 18 U.S.C. § 1348 (Securities and Commodities Fraud), as a claim for common law fraud. *Compare* R. Doc. 1, ¶¶ 94–101, *with* R. Doc. 31-1, ¶¶ 91–89. The only change to the allegations is swapping the word "felony" with the word "claim." *See* R. Doc. 31-1, ¶ 98. Knapp's relabeled fraud claim is thus futile as it fails to remedy the deficits in his initial version of the claim. *See* Part I.F., *supra*.

Next, Knapp relabeled his initial Count 7, which was based on 18 U.S.C. § 1581 (Peonage), as a claim based on 42 U.S.C. § 1994 (Peonage). *Compare* R. Doc.

42

1, ¶¶ 103–06, *with* R. Doc. 31-1, ¶¶ 100–03. He also moved two paragraphs previously listed under the initial Count 8, based on 18 U.S.C. § 1583 (Enticement into Slavery), under this newly labeled claim. *Compare* R. Doc. 1, ¶¶ 108–09, *with* R. Doc. 31-1, ¶¶ 104–05. The only change to the allegations is swapping the word "(slavery)" with "This is peonage." *Compare* R. Doc. 1, ¶ 106, *with* R. Doc. 31-1, ¶ 105. Altering which statute Knapp relies on to assert a claim for peonage does not alter the underlying flaw with the claim—that none of the facts alleged bear any logical connection to a claim for peonage. *See* Part I.G, *supra*.

In his "new" Count 6 for unlawful conversion, Knapp has simply combined his initial Count 8, based on 18 U.S.C. § 1583 (Enticement into Slavery), initial Count 9, based on 18 U.S.C. § 1584 (Sale into Involuntary Servitude), and initial Count 10, based on 18 U.S.C. § 1589 (Forced Labor), into one relabeled claim for unlawful conversion. *Compare* R. Doc. 1, ¶¶ 110–12, 114–19, 122–25, *with* R. Doc. 31-1, ¶¶ 106–18. The only change to the allegations is in paragraph 112, which now alleges that: "While not <u>originally</u> legally theft, that transaction was not equal consideration. <u>Now that the blank indorsement has gone through rescission, these negotiable instruments are now stolen.</u>" *See* R. Doc. 31-1, ¶ 112 (additions are underlined). Again, this proposed amendment is futile. Not only does Knapp's proposed amended complaint fail to allege any of the elements of conversion, but his claim is also still based on the same meritless conspiracy theory. *See Petsche v.*

43

*EMC Mortg. Corp.*, 830 F. Supp. 2d 663, 673 (D. Minn. 2011) ("Conversion requires (1) willful interference with the property of another, (2) without lawful justification, that causes (3) the lawful possessor to be deprived of use and possession of the property." (citing *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997))); *see also* Part I.B, *supra*; R. Doc. 37, at 5–6.

Finally, Knapp relabels his initial Count 11, which was based on 18 U.S.C. § 1593A (Benefitting Financially from Peonage, Slavery, and Trafficking in Persons), as a claim for unjust enrichment. *Compare* R. Doc. 1, ¶¶ 128–32, *with* R. Doc. 31-1, ¶¶ 120–24. The only changes to the allegations are to add "unknowingly" before "released with a blank indorsement," *compare* R. Doc. 1, ¶ 129, *with* R. Doc. 31-1, ¶ 121, and make two changes to paragraph 124 so it now reads: "Due to lack of terms and communications, it is assumed that WINGS intends to entice its beneficiaries into <u>peonage</u> for financial gain <u>by having them fund their own loans</u>," *compare* R. Doc. 1, ¶ 132, *with* R. Doc. 31-1, ¶ 124 (additions/changes underlined).

"In order to establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001). Importantly, "[a]n action for unjust enrichment does not lie simply because one party benefits from the efforts of others; instead, it must be shown that

44

a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *Id.* (quotation omitted).

As already explained in the proceeding sections, Knapp's allegations are based on a widely and universally rejected conspiracy theory and can be rejected on that basis alone. There is no credible argument that Wings was unjustly enriched by requiring Knapp to comply with the terms of his loans and repay Wings the money he borrowed from Wings. In addition, as the loans are governed by enforceable contracts that provide the repayment terms, there can be no action for unjust enrichment. *See Caldas*, 820 N.W.2d at 838 (unjust enrichment "does not apply when there is an enforceable contract that is applicable").

Knapp's proposed Amended Complaint is futile, providing an independent ground for this Court to affirm the district court's denial of Knapp's motion to amend.

## III. THE DISTRICT COURT CORRECTLY EXERCISED ITS DISCRETION IN GRANTING WINGS' RULE 11 MOTION.

The district court also properly granted Wings' motion for sanctions under Rule 11.

Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part:

(b) By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it— an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

45

1. it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]

2. the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…

Fed. R. Civ. P. 11(b). Rule 11(c) provides for the imposition of sanctions in the event there is a violation of Rule 11(b).

"In determining whether this provision has been violated, a court 'must determine whether a reasonable and competent attorney would believe in the merit of an argument.'" *Welk v. GMAC Mortg.*, 850 F. Supp. 2d 976, 1000 (D. Minn. 2012) (quoting *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003)). Rule 11 requires parties or their attorneys to conduct a reasonable inquiry of the factual and legal bases for their claims. *Coonts*, 316 F.3d at 753. "Courts evaluate Rule 11 motions using a standard of objective reasonableness to assess the litigant's conduct, considering factors such as 'the wrongdoer's history, the severity of the violation, and the degree to which malice or bad faith contributed to the violation.'" *Sharma v. Crosscode, Inc.*, 2022 U.S. Dist. LEXIS 47796, *46 (D. Minn. March 17, 2022) (quoting *Bus. Guides v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551, (1991); *Pope v. Federal Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995)). "[T]he central purpose of Rule 11 is to deter baseless filings in district court . . . ." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "[P]ro se litigants are subject to the same

46

Rule 11 standards as licensed attorneys." *Sharma*, 2022 U.S. Dist. LEXIS 47796, *46 (citing *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993)).

The district court correctly granted Wings' motion for sanctions because Knapp willfully ignored legal precent indicating his claims were meritless. The court imposed a very modest sanction—it enjoined Knapp from suing Wings again in the District of Minnesota without first seeking pre-approval from the district court.

Neither Knapp's brief before the district court nor his brief before this Court point to any legal precedents that provide even a minutia of support for the legal theories pleaded in Knapp's Complaint. Rather, Knapp simply asserts—without supporting argument or authority—that he was acting in good faith and that his "filings reflect an honest effort to seek redress."[9] App. Br. at 26. Viewed objectively, as Rule 11 requires, that is simply not true. *See Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (explaining that Rule 11 is objective, not subjective).

As explained above, Knapp's theory is that he can sign his name to documents using certain language and thereby convert them into securities that he can use to pay off his mortgage and HELOC loans—ignoring the ample legal precedent

---

[9] While Knapp does cite caselaw in his brief, the cases he cites simply lay out the background legal standards that apply to motions to dismiss, rule 11 sanctions, and pro se complaints. Despite claiming in his response letter that his claims "rest firmly on substantiated facts and prevailing law," Knapp has yet to point to a single case or legal theory supporting his claims.

47

rejecting his theory and the requirement in his loan documents that he make payments "in U.S. currency." *See* R. Doc. 10-2, at 1; R. Doc. 10-1, at 2–3. Wings' Rule 11 letter laid out the clear legal and factual deficiencies in Knapp's Complaint and in response Knapp expressed his "unwavering intent to proceed with the litigation of [his] claims." *See* R. Doc. 27-2 at 2–6; R. Doc. 27-3. The district court properly exercised its discretion in holding that Knapp's "claims are meritless and that their assertion is not reasonable," and none of Knapps arguments to the contrary hold any weight. R. Doc. 37 at 12.

Finally, Knapp argues yet again that Wings failed to comply with Local Rule 7.1, and yet again, this argument was not raised below and is therefore forfeit. *See* Part I.H.1, *supra*. Wings' safe harbor letter complied with Local Rule 7.1, and Knapp's response made clear that he had no intention of withdrawing his meritless Complaint. *See* R. Doc. 27-2; R. Doc 27-3.

The district court properly granted Wings' Motion for Sanctions, and this Court should affirm.

## CONCLUSION

For the foregoing reasons, the district court correctly dismissed Knapp's Complaint with prejudice and properly exercised its discretion in granting Wings motion for sanctions and denying Knapp's motion to amend.

48

Respectfully submitted this 4th day of February, 2025.

By: */s/ Tessa Mansfield Hirte* _____
Lisa M. Lamm Bachman (#264313)
Tessa Mansfield Hirte (#0396591)
Paul W. Magyar (#0399108)
FOLEY & MANSFIELD, PLLP
250 MARQUETTE AVENUE, SUITE 540
MINNEAPOLIS, MN  55401
Telephone:  (612) 338-8788
ATTORNEYS FOR APPELLEE WINGS
FINANCIAL CREDIT UNION

49

## CERTIFICATE OF COMPLIANCE AND TECHNICAL REQUIREMENTS

This brief complies with the type-volume requirements of FRAP 32(a)(7)(B)(i). This brief was prepared using Microsoft Word Version 16.0 in 13-pt. font, which reports that the brief contains 12,201 words, excluding the parts of the brief exempted by FRAP 32(f). Pursuant to 8th Cir. R. 28A(h), this brief has been scanned for viruses and is virus free.

Dated this 4th day of February, 2025.

By: */s/ Tessa Mansfield Hirte* _____
     Lisa M. Lamm Bachman (#264313)
     Tessa Mansfield Hirte (#0396591)
     Paul W. Magyar (#0399108)
     FOLEY & MANSFIELD, PLLP
     250 MARQUETTE AVENUE, SUITE 540
     MINNEAPOLIS, MN 55401
     Telephone: (612) 338-8788
     ATTORNEYS FOR APPELLEE WINGS
     FINANCIAL CREDIT UNION

Appellate Case: 24-3359    Page: 64    Date Filed: 02/04/2025 Entry ID: 5482194